No. 25-1291

IN THE

# United States Court of Appeals for the Fourth Circuit

---

AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, ET AL.,

*Plaintiffs-Appellees*,

v.

SOCIAL SECURITY ADMINISTRATION, ET AL.,

*Defendants-Appellants.*

On Appeal from the U.S. District Court
for the District of Maryland
Case No. 1:25-cv-00596

---

## RESPONSE IN OPPOSITION TO MOTION FOR STAY PENDING APPEAL

---

Alethea Anne Swift
DEMOCRACY FORWARD FOUNDATION
P.O. Box. 34553
(202) 448-9090
aswfit@democracyforward.org
*Counsel for Plaintiffs-Appellees*

*Additional counsel on signature page.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................. 1

STATEMENT .................................................................... 2

ARGUMENT ..................................................................... 7

I.     The district court's order granting the application for a temporary restraining order is not appealable. ............................................ 7

II.    A stay would be inappropriate and unwarranted. ................................... 12

     A.    Defendants are unlikely to succeed on the merits........................... 13

     B.    Leaving the TRO in place will not injure Defendants, much less cause them irreparable harm........................................ 16

     C.    Staying the TRO would substantially harm plaintiffs' members and be detrimental to the public interest. ..................................... 18

CONCLUSION ................................................................... 20

CERTIFICATE OF COMPLIANCE ............................................... 21

## INTRODUCTION

Defendants-appellants ask for an emergency stay but face two problems. First, there is no final, appealable district court decision. Second, there is no emergency.

The district court entered a temporary restraining order on March 20, 2025 (the "temporary order"). Since then, the parties have agreed to extend the temporary order's effect through April 17 and stipulated to a briefing schedule for plaintiffs-appellees' forthcoming motion for a preliminary injunction. That motion will be fully briefed on April 10 and heard on April 15. The order resolving it will supersede and replace the temporary order that is the subject of defendants' appeal. Like the vast majority of temporary restraining orders, the temporary order is not appealable. This Court should permit the district court to finish its work and dismiss the appeal for lack of appellate jurisdiction.

Alternatively, the Court should deny the motion for a stay. Defendants do not demonstrate a likelihood of success on the merits. Defendants' actions likely violate both the Privacy Act and the Administrative Procedure Act. Defendants also fail to show that they will suffer real injuries, much less irreparable harm, if this Court does not stay the temporary order before it expires in less than three weeks, or that the equities weigh in their favor. The temporary order prevents harm to plaintiffs and serves the public interest by ensuring that defendants do not

disclose highly sensitive, detailed, and non-anonymized private information to unauthorized people without first complying with the Privacy Act. Defendants do not come close to the heavy burden required for a stay.

## STATEMENT

After President Trump took office, he issued an executive order establishing the "Department of Government Efficiency to implement the President's DOGE Agenda . . . ." (ADD26).[1] Elon Musk, a senior advisor to the President, is the de facto head of DOGE. (ADD25). According to the White House press secretary, the President has directed Musk and DOGE to identify fraud at the Social Security Administration (SSA). (ADD30).

The district court, in assessing whether quick-developing circumstances required an emergency order, discussed in detail the arrival of DOGE personnel at SSA and their requests for sensitive data as of mid-March. (ADD34–42). The DOGE Team[2] members and affiliates demanded and obtained full access to non-anonymized data about millions of Americans in SSA's complex and comprehensive systems of record. (ADD38–39, 43). They also requested the source code for SSA's complex systems. (ADD38, 41). Many did so without

---

[1] Defendants provided the district court's temporary restraining order and opinion in an addendum to their motion; in this opposition, appellees will cite the order and opinion by the addendum page numbers (ADD1–143).

[2] The relevant executive order directs the heads of each federal agency, including SSA, to "establish within their respective agencies a DOGE Team of four employees." (ADD120).

completing standard training or background investigations. Some were not yet detailed to SSA. And none demonstrated or explained their need to access massive amounts of non-anonymized (and highly sensitive) data. (ADD121–125).

In contrast, in assisting auditors, SSA ordinarily provides data pertaining to a requested scope of review, which the requester would outline in detail. (ADD37). *"*In response, SSA provides 'anonymized or sanitized data needed for the type of review being conducted. If problems were identified, then the individual cases would be located and addressed.'" (*Id.*). The DOGE team nevertheless demanded that they "be given immediate, full access to SSA data in the Enterprise Data Warehouse ('EDW'), which included Numident files, the Master Beneficiary Record ('MBR') files, and the Supplemental Security Record ('SSR') files." (*Id.* ¶ 30). Citing the Flick declaration, the district court explained that "EDW contains 'extensive information about anyone with a social security number, including names, names of spouses and dependents, work history, financial and banking information, immigration or citizenship status and marital status.' (*Id.* ¶ 31). The Numident file 'contains information necessary for assigning and maintaining social security numbers.' (*Id.* ¶ 32). The MBR and SSR records 'contain detailed information about anyone who applies for, or receives, Title II or Title XVI benefits.'" (*Id.* ¶ 33).

To preserve the status quo pending a hearing on forthcoming preliminary injunctive relief, the district court on March 20 entered a temporary order (ADD1–

6) and accompanying opinion (ADD7–143). The district court explained that the temporary order was necessary to prevent irreparable harm caused by defendants' unlawful disclosure of plaintiffs' private and personally identifying information and that the government had shown no countervailing injury (ADD135–139). The district court concluded that "plaintiffs[3] are likely to succeed on their claim that SSA's provision to the DOGE Team of access to SSA systems is 'not in accordance with' the Privacy Act, and therefore in violation of the APA." (ADD134). The court also concluded that plaintiffs "are likely to succeed on a claim that the conduct at issue was unreasonable and capricious." (ADD135).

The temporary restraining order precludes SSA from disclosing personally identifiable information to DOGE team members or DOGE affiliates without sufficiently explaining their "need to know" such information as required by the Privacy Act. (ADD1–3). Using the terminology of the President's executive order, the temporary order defines the terms "DOGE Team" and "DOGE Affiliate" to refer to persons working on implementing the "DOGE agenda." (ADD5).

The temporary order explicitly does *not* preclude SSA from sharing anonymized data or records with DOGE team members, provided that they complete training and background checks. (ADD2). The order also specifically permits SSA to provide access to non-anonymized data for those DOGE team

---

[3] Plaintiffs assert associational standing on behalf of their members. (*See* ADD97).

members who provide a detailed written explanation of the need for that data and the requested scope of access—*i.e.*, comply with the Privacy Act (ADD3).

Following entry of the temporary order, Acting SSA Commissioner Leland Dudek claimed that the temporary order applied to "virtually all" of SSA's tens of thousands of employees and functionally prohibited the agency from doing its work, (*see* ECF No. 51), although its text covers only the "ten unnamed DOGE people [who are] assigned to SSA to further the DOGE agenda," potential future additions to that group, and folks with whom they are working in concert. (ECF 52).[4] The district court instructed that any party needing further clarification should seek it from the court. (ECF Nos. 51–52). Defendants, who had raised concerns at the outset, did not.

Indeed, defendants were silent until their March 24 filing of a "Status Report and Certification" required by the temporary order. (ECF No. 56). In that filing, defendants represented that they had taken appropriate action to revoke DOGE Team members and affiliates' access to SSA data systems. (ECF No. 56 at 1–3). Notably, defendants acknowledged that paragraph 3 of the temporary order permitted them to provide DOGE Team members with access to "discrete, particularized, and non-anonymized data," subject to certain conditions necessary to evidence compliance with the Privacy Act. (*Id.* at 3). But defendants expressed

---

[4] On March 24, Defendants represented that an additional anonymous individual had joined the DOGE team. (ADD145). The team's current population is unknown to Plaintiffs.

neither a need for, nor an intention to pursue, such access, instead explicitly stating that they did not "seek to provide" DOGE Team members and affiliates with access to non-anonymized data. (*Id.* at 3).

Later on March 24, defendants filed their notice of appeal from the temporary order. They then waited two days to pursue a motion for a stay pending appeal, which they filed with the district court at 11:15 a.m. on March 26. (ECF No. 60). But defendants waited only seven hours after filing that motion to move for a stay from this Court. (Dkt. No. 5). That seven-hour window did not afford the district court the opportunity to even set a briefing schedule on defendants' motion, much less consider its merits or issue a ruling.

Approximately 24 hours after filing their motion to stay with the district court, defendants submitted a "Notice of Compliance" to that court stating that SSA planned to grant four DOGE personnel access to non-anonymized data. (ECF No. 62). Defendants' "Notice" neither contained nor reflected the written attestations of need required by the temporary order. (*Id.*). Defendants set a three-hour deadline for the district court to respond. The district court, fortuitously unoccupied by hearings in other cases, swiftly convened a telephonic status conference. At the conference, defendants represented that the projects on which the DOGE personnel were to work were projects long on the agency's to-do list but which agency personnel had never "gotten around" to doing. (ECF No. 67, 10:20-23). After the conference, the district court ordered additional briefing so

that plaintiffs could have an opportunity to respond to defendants' filing and the court could itself consider the arguments.

Later that day, the parties filed a joint status report agreeing to an extension of the temporary order through April 17; to an April 2 deadline for SSA to produce the administrative record; and to a briefing schedule on plaintiffs' forthcoming motion for a preliminary injunction. (ECF No. 68). The district court subsequently entered that schedule and, at the parties' request, set a hearing on plaintiffs' motion for April 15. (ECF No. 69).

Earlier today—only 48 hours after defendants moved for the extraordinary relief of a stay pending appeal—plaintiffs filed a brief at the district court opposing that motion.

## ARGUMENT

### I.    The district court's order granting the application for a temporary restraining order is not appealable.

It is well-established that temporary restraining orders are not appealable. *See OPM v. Am. Fed. of Gov't Emps., AFL-CIO*, 473 U.S. 1301, 1303–04 (1985). To circumvent that rule, defendants argue that the district court's temporary order qualifies as an "injunction" under 28 U.S.C. § 1292(a)(1), which provides for immediate appeal of orders "granting, continuing, modifying, refusing or dissolving injunctions." But temporary restraining orders only qualify as "injunctions" in rare circumstances not applicable here.  *See, e.g.*, *United States ex*

*rel. Lutz v. United States*, 853 F.3d 131, 139–40 (4th Cir. 2017) (finding no appellate jurisdiction over TRO); *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *1 (D.C. Cir. Feb. 15, 2025) (same).

To show that a temporary restraining order qualifies as an appealable injunction, defendants bear the burden of demonstrating that the order: "(1) may have a 'serious, perhaps irreparable consequence' and (2) can only be 'effectually challenged' through immediate appeal." *Lutz*, 853 F.3d at 139 (quoting *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981)). As this Court has emphasized, in making this determination, any exception to the rule is construed "narrowly," against the moving party. *Selective Insurance Company of America v. Westfield Insurance Company*, 73 F.4th 239, 243 (4th Cir. 2023).

The temporary order here does not come close to qualifying as an injunction, an understanding with which defendants appear to agree. As they argued in the district court just yesterday, "the short-term nature of a TRO sufficiently differentiates it from a preliminary injunction." (ECF No. 66, at 4); *accord Fernandez-Roque v. Smith*, 671 F.2d 426, 429 (11th Cir. 1982) ("[C]haracteristic of a temporary restraining order is the limitation on its duration.").

Defendants' main contention before this Court appears to be that the temporary order has temporarily halted the conduct at issue. Mot. at 8. But that is true for every temporary restraining order. The question before this Court is whether this temporary order is the rare type that should be treated as appealable.

Defendants point to nothing that qualifies as a serious or irreparable consequence of briefly delaying their attempts to "modernize" the SSA. As indicated at yesterday's status conference before the district court, some of these modernization efforts have long been on the SSA wish list. And a temporary delay in implementing a program (even a program spurred by Presidential action) is not the type of injury that transforms a temporary restraining order into an appealable order. Defendants' assertion that the temporary order "likely facilitates improper payments that will be difficult, if not impossible" to recover is both without support and does not overcome the jurisdictional hurdle here. (Dkt. No. 5 at 27.)

The temporary order here simply preserves the status quo, which has been in place at the SSA for decades. (*See* ECF No. 66, at 4 (defendants arguing that "[a] TRO is a short-term remedy with a fixed duration aimed at preserving the status quo")). "Until final judgment on the underlying litigation, there is no harm in preserving the status quo." *Lutz*, 853 F.3d at 139–40. An immediate appeal is unwarranted where, as here, defendants will be able to appeal, as of right, if the district court enters an injunction after further briefing and fact-finding. (ECF No. 69); *see* 28 U.S.C. § 1292(a)(1).

Nor is there any reason that this order "can only be 'effectually challenged' through immediate appeal." *Carson*, 450 U.S. at 84. The opposite is true; a rushed review of the district court's preliminary determination on an incomplete record does not qualify as effective review. "Orderly procedure requires that the trial court

9

be given the opportunity of passing on these legal matters at the time of the hearing of the motion for preliminary injunction." *Connell v. Dulien Steel Prods., Inc.*, 240 F.2d 414, 418 (5th Cir. 1957). Allowing this matter to proceed through the normal appellate channel means the trial court will have "opportunity to have a full presentation of the facts and law before entering an order that is appealable to the appellate courts." *Id.*

An analogous case came just last month when the government attempted to appeal a temporary order entered in the litigation involving Special Counsel Hampton Dellinger. *Dellinger*, 2025 WL 559669, at *1. The district court in that case granted a 14-day temporary restraining order and promised to move expeditiously towards consideration of injunctive relief, just as here. *See id.* The government filed an appeal and sought a stay of the temporary order, arguing the court should make an exception to the usual rule that such orders are not appealable because the order "works an extraordinary harm" on the government. *Id.* at *1, *5. In the alternative, the government requested the court construe the stay motion as a petition for a writ of mandamus. *Id.* at *1.

The D.C. Circuit rejected both requests, finding that there was no appellate jurisdiction over the denial of the 14-day temporary restraining order and no good reason for mandamus. *Id.* at *5-6. As the court explained, "[t]he relief requested by the government is a sharp departure from established procedures that balance and protect the interests of litigants, and ensure the orderly consideration of cases

10

before the district court and this court." *Id.* at *1. The court concluded that "[b]ecause it would be inconsistent with governing legal standards and ill-advised to hold that a TRO is appealable based solely on unsubstantiated claims of 'extraordinary harm' for fourteen days, we decline to treat the TRO as an appealable injunction." *Id.*

The government filed an application to vacate the temporary order in the Supreme Court, claiming there was appellate jurisdiction over the order "in light of the core executive power assertedly restrained." *Bessent v. Dellinger*, 145 S. Ct. 515, 515 (2025). But the Supreme Court declined to find jurisdiction and instead held the application in abeyance until the order was scheduled to expire; as the dissent noted, this was likely because the majority of the Supreme Court doubted the appealability of the temporary order. *Id.* at 516 (Gorsuch, J., dissenting).

As in *Dellinger*, the short-term order issued in this case to preserve the status quo pending a full hearing on injunctive relief does not qualify as an appealable order under § 1292(a)(1). The government cannot show any grave or irreparable damage in putting off their overhaul of the SSA for a few weeks, and allowing that overhaul to proceed without following the privacy laws and procedure would cause irreparable harm to *plaintiffs* (*see infra* 21-22.) Nor is immediate review of this short-term order needed; the normal appellate process, where this court can review the district court's decision on a fuller record, is a far more effective form of review.

The only case that defendants cite supporting appellate jurisdiction is *Abbott v. Perez*, 585 U.S. 579, 594 (2018). (Dkt. No. 5, at 7). But that case did not involve a short, temporary order to preserve the status quo pending more robust briefing and hearing; rather, it involved the decision of a three-judge panel after a full trial that effectively determined the electoral maps Texas had to use for the elections that year. *Abbott*, 585 U.S. at 559; *Perez v. Abbott*, 274 F. Supp. 3d 624, 636 (W.D. Tex. 2017), *rev'd and remanded*, 585 U.S. 579 (2018). The order at issue in *Abbott* was not a temporary restraining order, and *Abbott* thus is inapposite.

This Court lacks jurisdiction to review this appeal, so the stay pending the appeal must be denied and the appeal dismissed.

## II.    A stay would be inappropriate and unwarranted.

As an initial matter, defendants' motion to stay fails because they effectively moved simultaneously for this motion along with their stay motion in the district court, instead of first allowing the district court any time to consider the motion before it. Fed. R. App. P. 8(a)(2); *S.E.C. v. Dunlap*, 253 F.3d 768, 774 (4th Cir. 2001) (failing to pursue relief in the district court "constitutes an omission we cannot properly ignore."). Nor have defendants demonstrated that it was impractical for them to give the district court more than a few hours to resolve the request for a stay. Fed. R. App. P. 8(a)(2)(A)(i); *Dunlap*, 253 F.3d at 774. Defendants are fully aware of the Rule 8 requirements; the government routinely asks this and other courts of appeals to dismiss stay requests by other parties for

12

failure to seek a stay below. Because defendants failed to meaningfully seek a stay of the temporary order from the district court or demonstrate that it was impractical to do so, this Court should deny the procedurally deficient stay before it.

Even if the Court deems the temporary order reviewable, a stay is unwarranted. Defendants must (1) make a "strong showing" that they are likely to succeed on the merits; (2) show that they will be irreparably injured absent a stay; (3) demonstrate that the stay will not "substantially injure" plaintiffs; and (4) show that the public interest favors an injunction. *See Nken v. Holder*, 556 U.S. 418, 434 (2009); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Defendants cannot satisfy any of these requirements.

**A. Defendants are unlikely to succeed on the merits.**

A party seeking a stay pending appeal must make a "strong showing that he is likely to succeed on the merits." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). To succeed on the merits, defendants would have to show that the district court abused its discretion in granting the temporary restraining order in advance of the preliminary injunction hearing. *See Roe v. Dep't of Defense*, 947 F.3d 207, 219 (4th Cir. 2020), as amended (Jan. 14, 2020). They cannot.

First, as the district court explained, the harm plaintiffs allege is akin to the tort of intrusion upon seclusion, *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 424–25 (2021), and thus satisfies the injury in fact requirement of Article III, (ADD94). The district court carefully considered defendants' contention otherwise

13

and rejected it after extensive analysis of relevant case law (ADD76–94) that plaintiffs need not repeat in full here. In a nutshell, defendants contend that disclosing information to DOGE team members cannot constitute a cognizable harm for Article III standing purposes. But plaintiffs have a strong privacy interest in records that would ordinarily be maintained in the seclusion of the home or other private space, such as a bank or physician's office. (ADD91). Disclosing those records to persons who should not have them is the functional equivalent of an intrusion upon the seclusion of those spaces, sufficient to meet *Transunion*'s requirements.

Second, defendants contend that plaintiffs have not identified a final agency action that could be subject to challenge under the Administrative Procedure Act. (Def. Mot., Dkt. 5 at 17) Not so. DOGE team members requested full access to SSA's Enterprise Data Warehouse, and SSA granted that access. The Acting Commissioner's decision thus "concluded" the "agency's decisionmaking process." *Jake's Fireworks Inc. v. U.S. Consumer Prod. Safety Comm'n*, 105 F.4th 627, 630–31 (4th Cir. 2024). His decision determined the rights and obligations of agency personnel to disclose and receive private information and changed SSA policy. (ADD106–109).

Third, defendants contend that the Privacy Act forecloses plaintiffs' claims. (Def. Mot., Dkt. 5 at 21–23). But as defendants acknowledge, this Court has stated that "injunctive relief for a Government's violation of the Act will instead be

appropriate and authorized by the APA." *Doe v. Chao*, 435 F.3d 492, 505 n.17 (4th Cir. 2006); *see* (Def. Mot., Dkt. 5 at 23 n.2). Defendants also contend that they did not violate the Privacy Act by disclosing data to unauthorized personnel (Def. Mot., Dkt. 5 at 23–26), but the district court made detailed findings of facts, based on declarations, that DOGE team members lacked authority. (ADD120–124).

Most importantly, SSA's maintenance of the public's personally identifiable information is governed by the Privacy Act of 1974, which protects against "invasion[s] of personal privacy" and requires federal agencies to "collect, maintain, use, or disseminate" records containing such information in a way that both (1) "assures that such action is for a necessary and lawful purpose" and (2) provides "adequate safeguards . . . to prevent misuses of such information." 5 U.S.C. §§ 552a(b), (b)(4). To that end, the Privacy Act prohibits agencies from "disclos[ing] any record which is contained in a system of records . . . to any person, or to another agency" absent written authorization from the individual to whom the record pertains. 5 U.S.C. § 552a(b). None of plaintiffs' members have consented to the disclosures at issue here.

The Privacy Act also requires agencies to publish System of Records Notices ("SORNs") in the Federal Register to inform the public about how they collect and maintain personal information. The SORNs relevant here permit the disclosure of certain data to the Department of Treasury for the collection of Social Security taxes, see 71 Fed. Reg. 1827 (Jan. 11, 2006), or to respond to federal,

state, and local agencies after a data breach, see 72 Fed. Reg. 69723 (Dec. 10, 2007). But the SORNs permit disclosure to the Office of the President only for the purpose of responding to an inquiry made by "[an] individual or from a third party on [the individual's] behalf." 71 Fed. Reg. 1827; 71 Fed. Reg. 831. The "routine use" exception in those SORNs allow for access only to the extent "needed." *Id.* Defendants "offered no meaningful explanation as to why the DOGE team was in 'need' of unprecedented, unfettered access to virtually SSA's entire data systems in order to accomplish the goals of modernizing technology, maximizing efficiency and productivity, and detecting fraud, waste, and abuse." (ADD130).

## B. Leaving the TRO in place will not injure Defendants, much less cause them irreparable harm.

Defendants do not and cannot show that they will suffer irreparable harm if this Court does not stay the temporary restraining order. First, the temporary order itself will soon expire and be replaced by an order granting or denying plaintiffs' forthcoming motion for a preliminary injunction. (*See* ECF No. 69). Thus, the temporary order will have only minimal effect on defendants. Second, any injuries defendants allege—if they exist—are appropriately sourced to the Privacy Act, not the temporary order.

Third, defendants' argument that the temporary order prevents them from carrying out their responsibilities or the "DOGE agenda" is factually unsupported and legally insufficient. Defendants do not explain why such efforts could not proceed using redacted or anonymized data, which the temporary order expressly

16

permits and which plaintiffs' unrebutted evidence establishes is the standard anti-fraud practice at the agency. Nor do defendants suggest that the pathway the temporary order identifies for securing access to non-anonymized data is unworkable. Even if defendants' anti-fraud efforts were temporarily limited, "[m]ere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay are not enough" to constitute irreparable harm. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

The party seeking a stay pending appeal bears the burden of demonstrating irreparable harm if the stay is denied. Defendants' initial declination of the district court's invitation to "seek to provide SSA DOGE Team Members with access to 'discrete, particularized, and non-anonymized data' as permitted under the conditions contained in paragraph 3 of the [temporary] Order," (ECF No. 56 at 3), undercuts any subsequent argument regarding irreparability. Moreover, defendant Dudek yesterday stated that the SSA DOGE Team's current pursuits are things SSA has been considering for years but "has never gotten around" to doing. (ECF No. 67 at 10:20–23). Defendant Dudek's testimony is elucidating—and dispositive. Leaving the TRO in place does not risk any injury to defendants, much less irreparable harm.

Defendants also assert that the "injunction here impinges on the President's broad authority over and responsibility for directing employees in important work

17

to modernize federal government systems and identify fraud, waste, and abuse

throughout the federal government." (Def. Mot., Dkt. 5 at 26). But the temporary

order does not prevent DOGE members from scrutinizing SSA systems for waste,

fraud, and abuse. (Def. Mot., Dkt. 5 at 27). Rather, it simply requires them to

comply with relevant privacy laws and safeguards before doing so.

### C. Staying the TRO would substantially harm plaintiffs' members and be detrimental to the public interest.

Defendants must show that "issuance of the stay will not substantially injure

the other parties interested in the proceeding." *Nken*, 556 U.S. at 434. But

Defendants fail to address the harms plaintiffs and the public would suffer if the

DOGE team were permitted to enjoy "ongoing, unprecedented, unfettered access

to the income history, tax return data, and medical information of millions of

Americans." (ADD137–138).

The temporary order is the sole reason that the DOGE "employees who view

that information are subject to the same confidentiality obligations that apply to

other similarly situated agency employees." (Def. Mot., Dkt. 5 at 28). As

defendants make clear in their Status Report and Certification, only "while the

Court's Order remains in effect" will DOGE Defendants, DOGE Team members,

and DOGE Affiliates comply with baseline security practices, such as requiring

that anyone accessing SSA data completes requisite training, passes a standard

background check, and has finalized paperwork outlining and documenting the

work they will do at the agency. (ECF No. 56, at 2–3). More importantly, only "in light of the Court's Order" will SSA not "seek to provide" DOGE team members and affiliates with personally identifiable information in a manner that this Court ordered and that complies with the Privacy Act, that is, by identifying their need to know. (*Id*. at 3; *see also* ADD3).

Defendants seek to proceed as they had been for the few weeks before the district court issued the temporary order—allowing DOGE members who are not subject to standard confidentiality obligations to access the private, personal information of plaintiffs' members. A stay of the district court's order would allow defendants to misuse the sensitive personal information of millions of Americans, potentially transmitting it to other agencies, using it to train artificial intelligence models, or using artificial intelligence to analyze it. And with regard to data, "[o]nce the cat is out of the bag, it will be decidedly hard to put it back." *Earley v. Smoot*, 846 F. Supp. 451 (D. Md. 1994).

Moreover, the public is gravely harmed by the disclosure of confidential personal identifying information, particularly that which is prohibited by law. *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). While "rooting out possible fraud, waste, and mismanagement" in SSA programs is in the public interest, the government may not "flout the law to do so." (ADD141). The balance of equities and public interest therefore weigh strongly in favor of leaving the temporary restraining order in place.

# CONCLUSION

This Court should dismiss this appeal for lack of appellate jurisdiction. Alternatively, it should deny appellants' emergency motion for stay of the district court's temporary restraining order.

Dated: March 28, 2025

Respectfully submitted,

*Alethea Anne Swift*

_____

Alethea Anne Swift
Mark B. Samburg
Emma R. Leibowitz
Robin F. Thurston
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
aswift@democracyforward.org
msamburg@democracyforward.org
eleibowitz@democracyforward.org
rthurston@democracyforward.org

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This opposition to the motion complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A) because it contains fewer than 5,200 words, excluding the parts of the motion exempted by Fed. R. App. P. 27(a)(2)(B).

2. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Respectfully submitted,

March 28, 2025                    By: _Althea Anne Swift_____

                                 Alethea Anne Swift
                                 *Counsel for Plaintiffs-Appellees*